# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **EMIL L. MEADOWS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11CV00044 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **WAL-MART STORES EAST, LP, ET AL.,** ) | By: James P. Jones |
| ) | United States District Judge |
| ) | |
| Defendants. ) | |

*B.L. Conway, II, Conway Law Firm P.L.L.C., Abingdon, Virginia, for Plaintiff; Kenneth J. Ries, Johnson, Ayers & Matthews, Roanoke, Virginia, for Defendants.*

In this premises liability action arising under Virginia tort law, the plaintiff alleges that the two defendants, a retail store owner and a contractor hired to remove snow and ice from the store's premises, violated their respective duties by failing to remove ice where the plaintiff fell on the store's sidewalk.  Because I find that the plaintiff has failed to create a genuine issue of material fact with regard to either defendant, I will grant their Motion for Summary Judgment.

I

The plaintiff, Emil L. Meadows, was injured when she fell on the sidewalk in front of the Wal-Mart Supercenter in Bristol, Virginia ("Bristol Wal-Mart"),

which is owned and operated by the defendant Wal-Mart Stores East, LP ("Wal-Mart").[1] The defendant Childress, Inc. ("Childress") was a subcontractor for United States Maintenance, Inc. ("USM"), which held a contract with Wal-Mart to clear snow and ice from the premises of the Bristol Wal-Mart. The subject matter jurisdiction of this court is based upon diversity of citizenship and amount in controversy.

The defendants have moved for summary judgment. The plaintiff did not timely respond to the motion, but later filed a motion essentially seeking leave to add USM as a party, reopen discovery, and defer consideration of the present motion for summary judgment.

The facts of record, which are presented in the light most favorable to the plaintiff for purposes of the Motion for Summary Judgment, are as follows.[2]

Between the evening of January 29 and the morning of January 30, 2010, a snowstorm occurred that resulted in the accumulation of snow and ice at the Bristol

---

[1] The plaintiff originally sued only Wal-Mart Stores, Inc. She filed an Amended Complaint naming Wal-Mart Stores East, LP, as a defendant in the caption but also referring to Wal-Mart Stores, Inc. in the body of the pleading. However, I assume that the proper entity is Wal-Mart Stores East, LP. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all of the parties.").

[2] The defendants have filed in support of their Motion for Summary Judgment copies of the lengthy depositions of the plaintiff; her companion (the only known witness to the accident); the assistant manager of the Bristol Wal-Mart (who came to the scene following the plaintiff's fall); Childress' owner (who operated a snowplow at the Bristol Wal-Mart); and Childress' operations manager. The plaintiff has not submitted any additional evidence.

Wal-Mart. At the time, Wal-Mart had a contract with USM for the removal of snow and ice from their premises. The managers of a number of Wal-Mart stores in the region requested that USM subcontract the snow removal work to Childress, a local contractor with whom Wal-Mart had done business for a number of years before replacing them with USM. Childress, pursuant to their subcontractor arrangement with USM, was therefore responsible for removing snow and ice from the exterior and parking lot of the Bristol Wal-Mart on the night of this storm.

Throughout the afternoon of January 29, USM communicated with Childress about the subcontractor's preparedness for the forecasted storm. Childress requested permission from USM, which they received with the approval of the manager of the Bristol Wal-Mart, to pre-treat the store's parking lots with salt. The storm began around 10:00 p.m. Throughout the night and the following day, whenever the store's lots needed plowing or salting, Wal-Mart would notify USM, which in turn would call Childress to request that a team be sent to the store. Childress would respond by sending two or three trucks to plow and salt the lots. Childress performed its services at the Bristol Wal-Mart from 11:00 p.m. on January 29 to 12:48 a.m. on January 30, and again from 8:30 a.m. to 10:31 a.m. on January 30. Wal-Mart requested additional service from Childress on the morning of January 31. Childress returned at 6:55 a.m. and remained on the lot until 8:05 a.m.

Childress employees did not plow the sidewalks because a number of concrete barriers blocked access to the area. The company's trucks, however, could get close enough to throw salt on the sidewalks and up to the doors. Although it appears the agreement between Wal-Mart, USM and Childress provided for the subcontractor to remove snow and ice from all exterior areas of the store, employees of both Childress and Wal-Mart understood that Wal-Mart remained responsible for ensuring that sidewalks and walkways around the store were cleared.

Wal-Mart made no complaints to Childress about the quality of the company's work or any problems that had developed over the course of the three days in question. Childress employees always inspected their work before leaving the premises. The work orders Childress submitted to the Wal-Mart manager for payment following the January 29 pretreatment and an additional service trip later in the evening of January 31 indicated the manager's observation that the front sidewalks had not been salted.

As a matter of standard procedure, Wal-Mart required its employees to be watchful for ice or other hazards wherever they traveled inside or outside the store and to immediately secure any areas of concern. Should ice be discovered outside the store, the employees responsible for retrieving shopping carts from the parking

lot would be directed to secure the area, put down "ice melt" and place a warning sign in the area until the hazard had resolved.

Shortly before 6:00 p.m. on January 31, Emil Leigh Meadows arrived with a companion, Charles Leonard, at the Bristol Wal-Mart. The couple parked their vehicle in the store parking lot, walked across the lot and entered the general merchandise side of the store. Leonard remembered that there was a "slight skiff" of snow on the parking lot when they arrived, "just enough to dust the ground," and the couple had no problems getting into the store. (Leonard Dep. 30.) Meadows and Leonard and purchased a few items and then exited to return home. They turned left out of the general merchandise entrance and proceeded down the sidewalk in front of the store, an area frequented by employees responsible for retrieving shopping carts. As they were walking, Meadows fell and was knocked unconscious.

In her discovery deposition, Meadows could not provide any information about the weather or the condition of the sidewalk on that evening. She had no memory of how she fell or of any of the events that immediately followed her accident. Her companion, Charles Leonard, also deposed, remembered "[n]othing unusual" about the condition of the sidewalk immediately before the accident and that "[i]t was just wet." (*Id*. at 44.) He saw Meadows' feet "come up" in the air as she was walking beside him. (*Id.* at 36). While Leonard said that he could not see

ice when standing, "[W]hen I got down to see what was wrong [with Meadows], I could feel it was ice." (*Id*. at 45.) He could not judge how large the area of ice was or how long it had been there. (*Id*. at 80-81.)

Ralph Mooney, the Bristol Wal-Mart assistant manager who responded to the accident, remembered the pavement as looking "shiny." (Mooney Dep. 108.) He did not remember slipping or sliding or having any trouble walking. No de-icer or salt was present on the sidewalk at the time. There was snow further up the sidewalk toward the store's Garden Center, which was closed for the winter weather. In Mooney's report of the incident, he noted that the sidewalks had not been salted or sanded, but they had been shoveled free of snow.

After her fall, Meadows was transported to the hospital for treatment of various injuries, particularly to her neck and hip.[3]

Meadows asserts that Wal-Mart had a duty to maintain its sidewalk in a reasonably safe condition and that it failed to do so by not removing dangerous ice from the walking area and by not warning her of this condition on its property. Meadows asserts that Childress had a duty to perform its services in a reasonably

---

[3] In his deposition, Leonard asserted that Mooney accepted responsibility for the accident on behalf of Wal-Mart by stating that the company would "take care of all medicals and all her care." (*Id*. at 80.) I have not considered this alleged statement in reaching my decision because it is inadmissible to prove liability under Rule 409 of the Federal Rules of Evidence.

workman-like manner and that it did not do so by negligently failing to remove ice from the sidewalk on which she fell.

In their Motion for Summary Judgment, the defendants argue that summary judgment should be granted in their favor because (1) Meadows cannot show that the defendants had actual or constructive notice of the existence of ice on the sidewalk and (2) Childress owed no duty to the plaintiff.  I will address the second argument first.

II

It seems clear that Childress was an independent contractor in reference to the work the company performed at the Bristol Wal-Mart.  Childress undertook to produce a given result – snow and ice removal – without being controlled by the landowner as to the precise methods the company used.  *See S. Floors & Acoustics, Inc. v. Max-Yeboah*, 594 S.E. 2d 908, 911 (Va. 2004).  Wal-Mart, therefore, could not delegate to Childress its common law duty to maintain its premises in a reasonably safe condition.  *Love v. Schmidt*, 389 S.E. 2d 707, 709 (Va. 1990).

According to the Restatement, "One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."

Restatement (Second) of Torts § 383 (1965).  Although no Virginia appellate courts have addressed the standard of care applicable to independent contractors in premises liability suits, the Fourth Circuit has agreed that Virginia courts would be likely to concur with this portion of the Restatement.  *Anderson v. Wise*, No. 93-2223, 1994 WL 592716, at *2 (4th Cir. Oct. 31, 1994) (unpublished).  The standard of care applicable to Childress in this case, therefore, is the same standard applicable to Wal-Mart.

### III

The defendants also argue that their Motion for Summary Judgment should be granted because they lacked actual or constructive notice that a hazard had developed on the sidewalk of the Bristol Wal-Mart.

An award of summary judgment is appropriate where there is no genuine dispute as to any material fact such that one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must assess the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party.  *Nguyen v. CNA Corp.*, 44 F. 3d 234, 237 (4th Cir. 1995).

Rule 56 mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party "need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case." *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F. 3d 390, 393 (4th Cir. 1994) (internal quotation marks and citation omitted). Summary judgment is not "a disfavored procedural shortcut," but rather is an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

Applying these standards, the defendants' Motion for Summary Judgment must be granted.

IV

Virginia law governs this diversity claim. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). In Virginia, the rules applicable to landowners in slip-and-fall cases are well settled. *See Winn-Dixie Stores, Inc. v. Parker*, 396 S.E. 2d 649, 650 (Va. 1990). A person is an invitee when the landowner "has extended an express or implied invitation to the visitor and the visitor enters pursuant to the invitation." *Bauer v. Harn*, 286 S.E. 2d 192, 194-95 (Va. 1982). As such, Meadows was an invitee at the Bristol Wal-Mart and Wal-Mart, as the possessor of the premises, owed her a duty of ordinary care and prudence. *See Shiflett v. M. Timberlake, Inc.*,

137 S.E. 2d 908, 911-12 (Va. 1964). In discharging this duty, a landowner is required to have the premises in a reasonably safe condition for its visitors and to warn them of any unsafe condition that is known, or by the use of ordinary care should be known, to the landowner. *Fobbs v. Webb Bldg. Ltd. P'ship*, 349 S.E. 2d 355, 357 (Va. 1986); s*ee also Colonial Stores Inc. v. Pulley*, 125 S.E. 2d 188, 190 (Va. 1962).

The duty of ordinary care and prudence does not make a landowner an insurer of the safety of his invitees. *See W.T. Grant Co. v. Webb*, 184 S.E. 465, 466 (Va. 1936). In the absence of any evidence tending to show that a landowner knew, or should have known by the exercise of reasonable diligence, of the defect or unsafe condition, the landowner will not be liable to a customer for injuries caused by some defect or unsafe condition in the premises. *See Roll 'R' Way Rinks, Inc. v. Smith*, 237 S.E. 2d 157, 161 (Va. 1977). It is the plaintiff's responsibility to introduce evidence of the landowner's actual or constructive knowledge of a defective condition on the premises to establish her prima facie case of negligence. *Id*.

V

There is no evidence that the defendants had actual knowledge of the presence of ice on the sidewalk of the Bristol Wal-Mart on the evening in question.

The only issue remaining, therefore, is whether either defendant had constructive knowledge of ice prior to the plaintiff's fall.  Constructive knowledge of a dangerous condition on the premises may be shown by evidence that the condition "was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition."  *Grim v. Rahe*, 434 S.E. 2d 888, 890 (Va. 1993).  If a plaintiff is unable to show when a defect occurred on the premises, he has not made a prima facie case.  *Id.*  In other words, if the plaintiff fails to present any evidence as to when or for how long the unsafe condition existed, summary judgment for the defendant is appropriate.  *See Hodge v. Wal-Mart Stores, Inc.*, 360 F. 3d 446, 454 (4th Cir. 2004).

In this case, the plaintiff has not produced any evidence showing that the defendants had any notice of ice on the sidewalk.  The mere facts that there had been inclement weather the previous day and that the temperature was cold on the day in question are insufficient to establish constructive notice of ice on the sidewalk.  *See id.* at 453; *Adkinson v. Frizell*, No. 1:11CV00089, 2012 WL 4127617, at *3 (W.D. Va. Aug. 14, 2012); *Logan v. Boddie-Noell Enters., Inc.,* No. 4:11-cv-00008, 2012 WL 135284, at *6-7 (W.D. Va. Jan. 18, 2012).  Although awareness of severe weather conditions might render an unsafe condition foreseeable, it is insufficient proof of notice for purposes of premises liability.  *Hodge*, 360 F.3d at 453.  Instead, Meadows must show that Wal-Mart and

Childress had "constructive notice of the *specific* unsafe condition that injured her," *id.* at 453-54 – namely, ice on the sidewalk where she fell.  The only admissible facts the plaintiff has introduced with regard to notice is that a snow storm occurred more than twenty-four hours before this incident and that it was cold on the day of the plaintiff's accident.

Moreover, the plaintiff is unable to demonstrate when the ice formed on the sidewalk outside of the store.  Leonard remembered a "slight skiff" of snow on the parking lot as the couple made their way into the store, but they had no difficulty walking as they entered.  In addition, Wal-Mart employees responsible for retrieving shopping carts frequented the area in which Meadows fell, and none had noticed any ice before the accident.  It is, therefore, impossible to draw any positive inferences about when the ice formed on the sidewalk at the place where Meadows fell or how much time had passed that would have allowed the defendants to discover the hazard.  Thus, Meadows is unable to prove that the condition existed for a sufficient time to charge Wal-Mart and Childress with constructive notice of it, and a jury could only reach such a conclusion "as the result of surmise, speculation and conjecture." *Colonial Stores*, 125 S.E.2d at 190.  Accordingly, I find that summary judgment must be awarded in favor of the defendants.

VI

The plaintiff has moved as follows:  to amend her Complaint; for relief from the Scheduling Order; and for reconsideration of my Order entered after the plaintiff failed to timely respond to the Motion for Summary Judgment, that the motion be deemed submitted for decision.  Because the plaintiff has failed to present any facts justifying such action, her motions will be denied.

In the first place, the plaintiff has failed to show by affidavit or declaration why she was unable to present facts essential to justify her opposition to the Motion for Summary Judgment as required by Federal Rule of Civil Procedure 56(d).  Moreover, the plaintiff has failed to demonstrate how amending her Complaint to add USM as a party would allow her any greater opportunity to prevail, particularly since the applicable standard of care would be no different as to that party.  If the plaintiff cannot show that Wal-Mart or Childress had actual or constructive notice of any defect in the premises, it is highly unlikely that a different party who was not onsite would have had any such notice.

This action has been pending for fifteen months and further delay in its resolution is unjustified under these circumstances.

## VII

For these reasons, it is **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 33) is GRANTED, and Plaintiff's Motion to Amend, Motion for Relief from the Court's Scheduling Order & Motion to Reconsider the Court's Decision that the Defendants' Motion for Summary Judgment be Deemed Submitted for Decision (ECF No. 46) are DENIED.

A separate final judgment will be entered herewith.

ENTER: October 1, 2012

/s/  James P. Jones
United States District Judge